1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

CHRISTOPHER SEAN
MORIARTY,

               Plaintiff,

     vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

               Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CV 14-6909 RNB

ORDER AFFIRMING DECISION OF
COMMISSIONER

The Court now rules as follows with respect to the two disputed issues listed in the Joint Stipulation ("Jt Stip").[1]

**A.**    **Reversal is not warranted based on the ALJ's alleged failure to properly consider the state agency physicians' opinions as part of her residual functional capacity determination (Disputed Issue One).**

---

[1]    As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the administrative record ("AR"), and the Joint Stipulation filed by the parties.  In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1   Disputed Issue One is directed to the ALJ's residual functional capacity
2   determination ("RFC") in light of the opinions of two state agency physicians, Dr.
3   Bortner and Dr. Funkenstein.  (See Jt Stip at 5-14.)

4       A claimant's RFC is what a claimant can still do despite his limitations.  See
5   Smolen v. Chater, 80 F.3d 1273, 1291 (9th Cir. 1996); see also Reddick v. Chater,
6   157 F.3d 715, 724 (9th Cir. 1998).  An ALJ's RFC determination "must set out *all* the
7   limitations   and   restrictions   of   the   particular   claimant."     See   Valentine v.
8   Commissioner, 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original).

9       In 2008, Dr. Bortner completed a Mental Residual Functional Capacity
10  Assessment in which he stated the following.  (See 1 AR 280-82.)  Because of
11  depression, plaintiff is "moderately limited" in five areas of mental functioning.  (See
12  id. 280-81.)[2]  However, plaintiff is "not significantly limited" in any other identified
13  area of mental functioning.  (See id.)  Accordingly, plaintiff "would likely have
14  difficulty in recall/execution of complex instructions, but [he] can understand/execute
15  simple instructions, make work related decisions, interact with others or adapt to
16  change."  (See id. 282.)

17      In 2013, Dr. Funkenstein completed a Mental Residual Functional Capacity
18  Assessment in which he stated the following.  (See 2 AR 516-18.)  Because of an
19  affective disorder, plaintiff is "moderately limited" in six areas of mental functioning.

20
21
22

———————————

23      [2]      The five areas of mental functioning in which Dr. Bortner found plaintiff
24  to be moderately limited were as follows: (1) the ability to understand and remember
    detailed instructions; (2) the ability to carry out detailed instructions; (3) the ability
25  to maintain attention and concentration for extended periods; (4) the ability to
26  complete   a   normal   workday   and   workweek   without   interruptions   from
    psychologically based symptoms and to perform at a consistent pace without an
27  unreasonable number and length of rest periods; and (5) the ability to respond
28  appropriately to changes in the work setting.  (See 1 AR 280-81.)

2

(See id. 517-18.)[3]   However, plaintiff is "not significantly limited" in any other identified area of mental functioning. (See id.) Accordingly, plaintiff effectively is still capable of non-public, simple, repetitive tasks. (See id. 518.)[4]

The ALJ discussed the opinions of Dr. Bortner and Dr. Funkenstein in detail (see 2 AR 435-36, 439), but adopted only their ultimate conclusions in her RFC determination. Specifically, the ALJ's RFC determination reflected that plaintiff was limited to "simple repetitive tasks in a nonpublic setting and verbal collaboration should not be a primary component of the job but [plaintiff] can work side-by-side with coworkers, accept instructions and report to supervisors." (See 1 AR 434-35.)

The crux of plaintiff's claim is that the ALJ erred by failing to incorporate in her RFC determination, without explanation, the moderate limitations found by Dr. Bortner and Dr. Funkenstein, particularly Dr. Bortner's finding of a moderate limitation in plaintiff's ability to respond appropriately to changes in the work setting. (See Jt Stip at 8, 14.) As a preliminary matter, the Court notes that Dr. Bortner's finding of that limitation is internally inconsistent with his conclusion that plaintiff can "adapt to change." (See 1 AR 282.) And, to the extent that this inconsistency in

---

[3]     The six areas of mental functioning in which Dr. Funkenstein found plaintiff to be moderately limited were as follows: (1) the ability to understand and remember detailed instructions; (2) the ability to carry out detailed instructions; (3) the ability to maintain attention and concentration for extended periods; (4) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (6) the ability to interact appropriately with the general public. (See 2 AR 517-18.)

[4]     Specifically, Dr. Funkenstein stated that he agreed with a previous adverse ALJ decision from 2010, in which the ALJ had found that plaintiff was capable of "simple, routine tasks, with minimal public contact." (See 2 AR 518; see also 1 AR 125.)

1    Dr. Bortner's opinion gave rise to an ambiguity in the evidence, it was within the

2    ALJ's authority to resolve that ambiguity by declining to incorporate the limitation

3    in her RFC determination.  See, e.g., Magallanes v. Bowen, 881 F.2d 747, 750 (9th

4    Cir. 1989) (ALJ is responsible for resolving ambiguities in the evidence).

5          In any event, even assuming arguendo that Dr. Bortner's opinion was

6    unambiguous, the Court would still find that the ALJ did not err by failing to

7    incorporate in her RFC determination the moderate limitation singled out by plaintiff

8    (and the other moderate limitations found by Dr. Bortner and Dr. Funkenstein).  In

9    Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008), the Ninth

10   Circuit held that an ALJ properly incorporated the limitations identified in the

11   medical opinion evidence by adopting the only concrete restrictions that were

12   available to the ALJ, specifically, a physician's ultimate conclusion that the claimant

13   was restricted to simple tasks.  The Court finds that Stubbs-Danielson is controlling

14   because the ALJ here properly incorporated the limitations identified in the medical

15   opinion evidence by adopting the only concrete restrictions that were available to her,

16   specifically, Dr. Bortner's and Dr. Funkenstein's ultimate conclusions to the effect

17   that plaintiff  was capable of simple, repetitive tasks in a nonpublic setting.  See id.;

18   see also Sherman v. Colvin, 582 F. App'x 745, 749-50 (9th Cir. 2014) (now citable

19   for its persuasive value per Ninth Circuit Rule 36-3) (ALJ's RFC determination

20   properly accounted for the medical opinion evidence where the ALJ adopted the only

21   concrete restrictions identified by the claimant's physicians, i.e., their conclusion that

22   claimant was limited to unskilled work without dealing with the public or working

23   closely with others).

24         Although plaintiff contends that this case is factually identical to Bagby v.

25   Commissioner of Social Sec., - F. App'x -, 2015 WL 1567849, at *1-*2 (9th Cir. Apr.

26   9, 2015), the Court disagrees.  In Bagby, the Ninth Circuit found legal error where,

27   "despite *fully crediting* [a physician's] opinion, the ALJ failed to incorporate [that

28   physician's] finding that Bagby faced moderate limitations in her ability to '[r]espond

4

appropriately to usual work situations and to changes in a routine work setting' in his residual functional capacity ("RFC") assessment."   See id. at *1 (emphasis added). The Court finds that Bagby is distinguishable because, unlike the ALJ in that case, the ALJ in this case never fully credited or fully accepted the opinions of Dr. Bortner and Dr. Funkenstein; rather, the ALJ adopted the only concrete restrictions that were available to her from the medical opinion evidence (i.e., that plaintiff  was capable of simple, repetitive tasks in a nonpublic setting).  An ALJ's acceptance of concrete evidence of a claimant's limitations in mental functioning is necessary to find that the ALJ erred by failing to incorporate such limitations in her RFC assessment, not only in Bagby but also in similar cases.  See also Betts v. Colvin, 531 F. App'x 799, 800 (9th Cir. 2013); Lubin v. Commissioner of Social Sec. Admin., 507 F. App'x 709, 712 (9th Cir. 2013); Van Sickle v. Astrue, 385 F. App'x 739, 741 (9th Cir. 2010); Brink v. Comm'r of Soc. Sec. Admin., 343 F. App'x 211, 212 (9th Cir. 2009).

The Court therefore finds that reversal is not warranted based on the ALJ's alleged failure to properly consider the state agency physicians' opinions as part of her RFC determination.


**B.   Reversal is not warranted based on the ALJ's alleged failure to make a proper adverse credibility determination (Disputed Issue Two).**

Disputed Issue Two is directed to the ALJ's adverse credibility determination with respect to plaintiff's subjective symptom testimony.  (See Jt Stip at 14-28.)

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight."  See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  Under the "Cotton standard," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other

5

1   symptoms only if the ALJ makes specific findings stating clear and convincing
2   reasons for doing so.  See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see
3   also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12
4   F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991)
5   (en banc).

6       Plaintiff alleged that he was disabled beginning on August 1, 2007 because of
7   back problems, sciatica in his legs, depression, and anxiety.  (See 2 AR 462, 465,
8   470.)  During the hearing, plaintiff testified as follows regarding his work history,
9   treatment, and limitations.  Since his alleged disability onset date of August 1, 2007,
10  plaintiff has worked at "little side jobs," such as painting houses and cars.  (See 2 AR
11  461, 467.)[5]  Plaintiff's treatment included Norco, Gabapentin, and Mobic.  (See id.
12  464.)  On a scale of zero to ten, plaintiff's pain decreases with medication, from a
13  level of seven to a level of three or four.  (See id.)  Because of his impairments,
14  plaintiff is limited to sitting for twenty minutes at a time, standing for ten minutes at
15  a time, and lifting thirty pounds.  (See id. 466-68.)

16      The ALJ determined that, although plaintiff's medically determinable
17  impairments could reasonably be expected to cause the alleged symptoms, plaintiff's
18  statements concerning the intensity, persistence, and limiting effects of his symptoms
19  were "not entirely credible."  (See 2 AR 440.)  In support of this adverse credibility
20  determination, the ALJ proffered five reasons.  (See id.)  As discussed hereafter, the
21  Court finds that, while two of the reasons were legally insufficient to support the
22  ALJ's adverse credibility determination, any error in this regard was harmless
23  because the ALJ's remaining three reasons were legally sufficient.

24      One of the reasons proffered by the ALJ for her adverse credibility

25

26

27      [5]      The ALJ commented that the record reflected plaintiff performed
28  substantial gainful activity only in 2000, when he was a mechanic's helper.  (See id.
    462.)

6

1    determination was that plaintiff had received "limited and conservative treatment."
2    (See 2 AR 440.)  The ALJ specifically noted that plaintiff's medications had included
3    medications such as Norco, Gabapentin, Mobic, Buspar, Trazadone, and Clonazepam.
4    (See id.)   The record also reflects that plaintiff was treated with Oxycodone and
5    several epidural injections.  (See 2 AR 703, 768.)  In light of this evidence, which
6    evinces that plaintiff was treated with several significant pain medications, the Court
7    cannot concur with the ALJ's characterization of plaintiff's treatment as "limited and
8    conservative."  See Garrison v. Colvin, 759 F.3d 995, 1015 n.20 (9th Cir. 2014)
9    (doubting that epidural injections constituted conservative treatment); see also Kager
10   v. Astrue, 256 F. App'x 919, 923 (9th Cir. 2007) (disagreeing that claimant had failed
11   to receive significant treatment where she was prescribed Methocarbomal, Roxicet,
12   and Valium).

13           Another reason proffered by the ALJ for her adverse credibility determination
14   was that a VA physician had observed from an MRI of plaintiff's lumbar spine that
15   it "did not support the amount of opioid medication [plaintiff] was taking."  (See 2
16   AR 440; see also 2 AR 716.)  Although the ALJ's inference from this evidence is
17   unclear, the Court finds that no possible inference would be a legally sufficient basis
18   for the ALJ's adverse credibility determination.  To the extent that the ALJ appeared
19   to infer from the evidence that plaintiff was abusing his opioid medications, the Court
20   disagrees because no physician suggested that plaintiff was responsible for any
21   improper dosage in his opioid medications.  Alternatively, to the extent that the ALJ
22   appeared to infer from the evidence that plaintiff's condition did not warrant opioid
23   medications, the Court disagrees because the record reflects that, after the VA
24   physician had made that observation, plaintiff continued to be prescribed opioid
25   medications, albeit in a different combination.  (See 2 AR 712.)

26           Another reason proffered by the ALJ for her adverse credibility determination
27   was that plaintiff's treatment had "been effective."  (See 2 AR 440.)  Specifically, the
28   ALJ noted plaintiff's testimony that, on a scale from zero to ten, his pain decreased

7

with medication from a level of seven to a level of three or four.  (See id. 464.)  The Court finds that this was a legally sufficient reason on which the ALJ could properly rely in support of her adverse credibility determination.  See Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (an ALJ may consider whether treatment produced a fair response or control of pain that was satisfactory); see also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("[A]warding benefits in cases of nondisabling pain would expand the class of recipients far beyond that contemplated by the statute.").

Another reason proffered by the ALJ for her adverse credibility determination was that plaintiff's "poor earning record and sporadic work history do not enhance his credibility."  (See 2 AR 440; see also 2 AR 617, 626.)  The Court finds that this also was a legally sufficient reason on which the ALJ could properly rely in support of her adverse credibility determination.  See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (affirming adverse credibility determination where ALJ found that claimant had an "extremely poor work history" and "years of unemployment between jobs, even before she claimed disability").

The final reason proffered by the ALJ for her adverse credibility determination was that plaintiff "was able to respond to questions in an appropriate manner and to fully participate in the hearing."  (See 2 AR 440.)  The Court concurs because the transcript of the hearing reflects that plaintiff answered questions responsively and fully, and because the ALJ's observation went directly to plaintiff's allegation of depression and anxiety.  Accordingly, the Court finds that this also was a legally sufficient reason on which the ALJ could properly rely in support of her adverse credibility determination.  See, e.g., Drouin v. Sullivan, 966 F.2d 1255, 1259 (9th Cir. 1992) (ALJ's personal observation of claimant may serve as one factor in adverse credibility determination); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th

1  Cir. 1999) (same); <u>Verduzco v. Apfel</u>, 188 F.3d 1087, 1090 (9th Cir. 1999) (same);

2  <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1458 and n.8 (9th Cir. 1989) (same);

3  <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1985) (same).

4        In conclusion, the Court finds that, even though the ALJ erred in relying on two

5  of her five stated reasons in support of her adverse credibility determination, the error

6  was harmless because the ALJ's other three reasons and ultimate adverse credibility

7  determination were supported by substantial evidence.  <u>See</u> <u>Carmickle v. Comm'r</u>

8  <u>Social Sec. Admin.</u>, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (holding that ALJ's

9  reliance on two invalid reasons in support of adverse credibility determination was

10  harmless where remaining reasons were adequately supported by substantial

11  evidence).

12                   ******************

13        IT THEREFORE IS ORDERED that Judgment be entered affirming the

14  decision of the Commissioner and dismissing this action with prejudice.

15

16  DATED:  <u>July 17, 2015</u>

17

18                                    _____

19                                    ROBERT N. BLOCK

                                  UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28